**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| THE STATE OF ILLINOIS, EX REL., KWAME RAOUL, ATTORNEY GENERAL<br><br>    *PLAINTIFF,*<br><br>    v.<br><br>ELI LILLY AND COMPANY; NOVO NORDISK INC.; SANOFI-AVENTIS U.S. LLC; EVERNORTH HEALTH, INC. (FORMERLY EXPRESS SCRIPTS HOLDING COMPANY); EXPRESS SCRIPTS, INC.; EXPRESS SCRIPTS ADMINISTRATORS, LLC; ESI MAIL PHARMACY SERVICE, INC.; EXPRESS SCRIPTS PHARMACY, INC.; MEDCO HEALTH SOLUTIONS, INC; CVS HEALTH CORPORATION; CVS PHARMACY, INC; CAREMARK RX, LLC; CAREMARKPCS HEALTH, LLC; CAREMARK, LLC; UNITEDHEALTH GROUP, INC.; OPTUMRX INC.; AND OPTUMINSIGHT, INC.<br><br>    *DEFENDANTS.* | Case No. 1:23-CV-00170 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO UNITEDHEALTH GROUP INCORPORATED AND OPTUMINSIGHT, INC.'S RULE 12(b)(2) <u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................... 2

ARGUMENT .............................................................................................................. 7

I.   Legal Standard ................................................................................................ 7

II.   UHG and OptumInsight Completely Ignore Key Allegations ........................... 8

III.   The State's Factual Allegations Are Uncontested, and Must Be Accepted As True .......... 9

IV.   The Uncontroverted Facts Satisfy Federal Due Process for Specific Personal Jurisdiction Over UHG and OptumInsight ........................................................... 9

      A.   UHG and OptumInsight purposefully directed their activities at Illinois ........... 10

           1.   UHG and OptumInsight's conduct was both intentional and tortious. 11

           2.   UHG and OptumInsight's conduct was expressly aimed at Illinois. ... 12

           3.   UHG and OptumInsight knew that the State and Illinois diabetics would be injured in Illinois. .......................................................................... 14

      B.   UHG and OptumInsight's contacts with Illinois directly relate to the State's claims against them ...................................................................... 15

      C.   This Court's exercise of jurisdiction comports with fair play and substantial justice .................................................................................. 16

V.   Alternatively, the State is Entitled to Jurisdictional Discovery Regarding UHG and OptumInsight's Illinois Contacts, Involvement in the Scheme, and Corporate Structure. 18

CONCLUSION .......................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*BRABUS GmbH v. Individuals Identified on Schedule A Hereto*,
  2022 WL 7501046 (N.D. Ill. Oct. 13, 2022) ................................................. 12, 13, 18

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ........................................................................................ 10, 16

*Café Real Estate LLC v. VSP North Am. LLC*,
  262 F. Supp. 3d 637 (N.D. Ill. 2017) ...................................................................... 8

*Calder v. Jones*,
  465 U.S. 783 (1984) ........................................................................................ 11, 16

*Felland v. Clifton*,
  682 F.3d 665 (7th Cir. 2012) ..................................................... 7, 10, 11, 14

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*,
  141 S. Ct. 1017 (2021) ......................................................... 10, 13, 15, 16

*Gilman Opco LLC v. Lanman Oil Co.*,
  2014 WL 1284499 (N.D. Ill. Mar. 28, 2014) ................................................. 18, 19

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ................................................................................................ 10

*John Crane, Inc. v. Shein Law Ctr., Ltd.*,
  891 F.3d 692 (7th Cir. 2018) ................................................................................... 7

*Kosar v. Columbia Sussex Mgmt., LLC*,
  2021 WL 4499494 (N.D. Ill. June 1, 2021) ........................................................... 19

*Leong v. SAP Am., Inc.*,
  901 F. Supp. 2d 1058 (N.D. Ill. 2012) .................................................................... 9

*Lexington Ins. Co. v. Hotai Ins. Co., LTD.*,
  938 F.3d 874 (7th Cir. 2019) ................................................................................... 7

*NBA Properties, Inc. v. HANWJH*,
  46 F.4th 614 (7th Cir. 2022) ............................................................................ 12, 13

*Northwest 1 Trucking Inc. v. Haro*,
  613 F. Supp. 3d 1081 (N.D. Ill. 2020) ............................................................. 16, 17

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003) ................................................................................... 7

*Riverdale Plating & Heat Treating, LLC v. Andre Corp.*,
    2015 WL 5921896 (N.D. Ill. Oct. 9, 2015) .............................................................. 8

*Rose v. Franchetti*,
    713 F. Supp. 1203 (N.D. Ill. 1989) ..................................................................... 7

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ..................................................................... 10, 11

*uBID, Inc. v. GoDaddy Group, Inc.*,
    623 F.3d 421 (7th Cir. 2010) ............................................................. 14, 15, 17

*Walden v. Fiore*,
    571 U.S. 277 (2014) .......................................................................... 12, 13

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ................................................................................ 16

## S<small>TATUTES</small>

815 ILCS 505/2 .......................................................................................... 4

815 ILCS 505/7 .......................................................................................... 4

815 ILCS 510/2 .......................................................................................... 4

The State of Illinois (the "State") submits this opposition to the Rule 12(b)(2) Motion to Dismiss filed by Defendants UnitedHealth Group, Inc. ("UHG") and OptumInsight, Inc. ("OptumInsight").

## INTRODUCTION

For nearly twenty years Illinois diabetics and health plan payors have been increasingly overcharged for necessary diabetes medications due to the unfair and deceptive practices of UHG, OptumInsight, and the other Defendants. The State filed suit in Illinois state court to put an end to the Defendants' conduct and to recover the overpayments made by Illinois diabetics. (*See, e.g.,* ¶¶ 34–35, 498).[1] The claims are based on Illinois law, including the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), and, in part, arise from the State's sovereign interest in protecting the health and safety of Illinoisans as well as the integrity of the State's marketplace. (¶ 36–37).

Defendants UHG and OptumInsight have not disputed the State's allegations regarding their involvement in the Insulin Pricing Scheme or the devastating impact the Scheme has had in Illinois. Rather, UHG seeks to evade suit in Illinois by mischaracterizing the State's claims to be solely based on its status as OptumRx's parent company (Dkt. 56 at 5). OptumInsight seeks to evade suit by arguing that its misconduct occurred elsewhere. (*Id.* at 6). However, the uncontroverted allegations and evidence show that both in fact conducted Scheme-related activities in Illinois. The State's allegations against UHG extend far beyond its role as a parent company and include UHG's own direct involvement in formulating and executing the Scheme, and providing pharmacy services in furtherance thereof. (¶¶ 179-83, 197, 350). OptumInsight

---

[1] All references in this Memorandum to parenthetical paragraph citations are citations to the individually numbered paragraphs of the Complaint (Dkt. 1-1).

analyzed data, including data specific to Illinois, to advise the Defendants on setting the at-issue list prices and constructing the at-issue formularies in a manner that is most profitable for all Defendants. (¶¶ 188-93, 322, 350). Indeed, OptumInsight received tens of millions of dollars for Illinois claims analytics services in the relevant time period. (¶ 193). The conduct of both UHG and OptumInsight had the intended and foreseeable effect of harming Illinois diabetics and the State. (¶¶ 350-51). UHG and OptumInsight provided no affidavits or evidence to contest the State's allegations, about their own forum contacts or their assistance of other Defendants in violations of the ICFA and the UDTPA.

The complaint contains more than sufficient allegations of forum-related contacts by UHG and OptumInsight to support this Court's exercise of jurisdiction over them. The Mississippi court's decision they cite, (Dkt. 56 at 7), is inapposite because the facts and law under which this Court must assess jurisdiction are different. Under the uncontroverted factual allegations and the law of Illinois, this Court has jurisdiction over UHG and OptumInsight and their Rule 12(b)(2) Motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Over 1.3 million Illinoisans live with diabetes, a disease that would severely harm or kill them without medication like insulin, a drug that now costs thousands annually for a single diabetic. (¶¶ 1, 4, 225, 250). An insulin product that was originally priced at $20 when released in the late 1990s, now ranges between $300 and $700. (¶¶ 13–14). In recent years especially, the price of the drug has skyrocketed. In the last decade alone, insulin prices have increased as much as 1000%. (¶¶ 15, 261, Figs. 2–6).

As a result, one in four diabetics skip or ration critical doses which, in turn, leads to further health complications and additional costs. (¶¶ 30, 31, 262, 289, 444, 456–57, 464). In Illinois, the

State spends billions of dollars on increased healthcare costs for diabetes and related complications. (¶¶ 31–33, 289, 456–61).

Tellingly, the drug has not changed in the past 20 years, and there has been little to no innovation in the product itself—today's $350 insulin is the exact drug originally priced at $20. (¶¶ 17, 242–54). In fact, it costs the Manufacturer Defendants less than $2 to make. (¶¶ 14, 490). Normal market forces are not at work. (¶¶ 331–34, 370–71).

### *The Insulin Pricing Scheme*

The Manufacturer Defendants dominate the diabetes drug market, manufacturing 99% of insulins on the market. (¶¶ 5, 258). The Manufacturers also, in coordination with the PBMs, set the list price for their diabetes drugs. (¶¶ 20, 291, 340). The list price is the basis for the price that nearly every consumer and payor pays for the at-issue drugs. (¶¶ 27, 356).

The PBM Defendants control 80% of the market and manage the pharmacy benefits for the vast majority of Illinoisans. (¶¶ 6, 310). In this role, the PBMs establish drug lists called formularies that determine which diabetes drugs are covered and not covered for nearly every payor in Illinois. (¶¶ 7, 9, 291, 335). Most prescribing doctors and patients, of course, opt for covered medications. (¶¶ 7–11). PBMs thus effectively control utilization of the at-issue drugs. (¶¶ 6–11, 335). In short, the Manufacturers control the product, the PBMs control the buyers, and collectively these two groups of Defendants control the price paid by nearly every diabetic and payor in Illinois. (¶¶ 331–51).

Knowing the importance of price, volume, and access, the Manufacturers and PBMs work together to maximize their own profits to the detriment of Illinoisans. (¶¶ 6–11, 351). Given that the PBMs and Manufacturers treat diabetes drugs as interchangeable, formulary inclusion depends on which Manufacturer increases the PBM's bottom lines the most. (¶¶ 22, 242–54, 331, 361–62).

The Manufacturers, knowing formulary position directly correlates to sales volume, simply raise their reported prices and then secretly kick back a significant portion of that price to the PBMs (referred to as "Manufacturer Payments"). (¶¶ 10, 20, 296–300, 336, 340, 344, 358–62). The Manufacturers also know that every way the PBMs make money off the at-issue drugs is directly tied to the inflated list prices. (¶¶ 338, 375, 385). It is a win-win for Defendants: the PBMs make money from the increased prices and secret kick back payments, while the Manufacturers lock in huge volume and maintain their profit margins. (¶¶ 23–24, 372–375, 406, 409). The result, however, is unconscionable—the most expensive diabetes drugs end up on the formularies used by most Illinoisans and both Illinois diabetics and the State end up paying more so the Defendants can profit. (¶¶ 22, 333, 344–46, 351, 361–62).

### The State's Claims

The State brought suit in Illinois state court against the Manufacturer Defendants and the PBM Defendants for violations of the ICFA, the UDTPA, and unjust enrichment. (¶¶ 483–500). The State sued on behalf of the hundreds of thousands of Illinoisans injured by the Insulin Pricing Scheme. (¶¶ 34, 214–215).

The ICFA and UDTPA prohibit unfair and deceptive trade practices in the conduct of trade or commerce within Illinois. 815 ILCS 505/2; 815 ILCS 510/2. The complaint alleges that each Defendant's conduct and involvement in the Insulin Pricing Scheme was both unfair and deceptive in violation of the ICFA and UDTPA and caused injury in Illinois to over a million Illinois diabetics. (¶¶ 483–491). Each purchase of the at-issue drugs at prices resulting from the Insulin Pricing Scheme, by any Illinois resident, constitutes a separate violation of the Acts. 815 ILCS 505/7. Because Illinois diabetics continue to pay for the at-issue drugs based on the false prices generated by the Scheme, the harm is ongoing. (¶¶ 469).

*Relevant Jurisdictional Facts*

The complaint sets forth the following uncontroverted facts related to UHG's and OptumInsight's involvement in the Insulin Pricing Scheme and related forum contacts:

- UHG is the largest healthcare company in the United States and is ranked 5th on the Fortune 500 list. (¶¶ 177, 308). UHG is directly involved in PBM services, pharmacy services, and formulary construction at the center of the Insulin Pricing Scheme. (¶ 179).

- UHG and the Optum Defendants share numerous directors and executives. Through these shared directors and executives, UHG is directly involved in PBM services, formulary construction, and mail-order pharmacy services at issue in this case, in Illinois. (¶ 197). In fact, UHG formed its Pharmacy Steering Committee to oversee all UHG formularies, including those of Defendant OptumRx, and tasked OptumRx with negotiating Manufacturer Payments and contracts for all UHG formularies. (¶ 182).

- UHG and the Optum Defendants conduct business in Illinois, provide PBM services in Illinois, construct formularies for use in Illinois, dispense at-issue drugs to Illinois diabetics through UHG's mail-order pharmacies, and gather and analyze Illinois-specific data all in furtherance of the Insulin Pricing Scheme. (¶¶ 179, 197, 205-10).

- UHG, on a regular basis throughout the relevant period, directly engaged with each of the Manufacturer Defendants in furtherance of the Scheme. (¶¶ 181, 350).

- In at least 2010, 2016, 2017, and 2018, UHG executives, along with executives of Defendant OptumRx, met with Manufacturer Eli Lilly to discuss their coordinated efforts related to the at-issue drugs, in furtherance of the Insulin Pricing Scheme. These executive exchange meetings included UHG CEOs, Executive Vice President of Corporate Affairs, and Senior Directors of Diabetes Alliance and Eli Lilly's CEO. (¶ 181).

- In at least 2014, UHG's CEO and Senior Vice President met with executives of Manufacturer Novo Nordisk to discuss their coordinated efforts related to the at-issue drugs, in furtherance of the Scheme. (¶ 181).

- In at least 2014 and 2018, UHG's CEO and other executives met with executives of Manufacturer Sanofi with the goal of forming an "executive level strategic relationship" in furtherance of the Scheme. (¶ 181).

- UHG and OptumInsight are members of the Pharmaceutical Care Management Association ("PCMA"). (¶ 320). The PCMA is the main PBM trade association and is central to the Insulin Pricing Scheme. (¶¶ 318-21). Multiple times a year, from 2010 to 2019, UHG and OptumInsight attended PCMA meetings and met privately with the Manufacturer Defendants for the purpose of developing and maintaining the Insulin Pricing Scheme. (¶¶ 318, 322, 325). Notably, key at-issue lockstep price increases were made shortly after these Scheme-related meetings. (¶¶ 328-29).

- OptumInsight is registered to do business in Illinois. (¶ 185). It may be served with process in Illinois and holds an active Third Party Administrator license in Illinois. (¶¶ 185-86).

- OptumInsight provides data and analysis on the profitability of the Insulin Pricing Scheme, which specifically results in injury to Illinois diabetics and the State. (¶¶ 188-93, 350-51).

- OptumInsight provides data, analytics, and consulting services to the Manufacturer Defendants related specifically to Illinois. (¶¶ 188-92). OptumInsight meets with, contracts with, and coordinates directly with the Manufacturers for the purpose of targeting Illinois diabetics and furthering the Scheme. (¶¶ 188-92, 350).

- Using market data related to drug utilization, internal medical studies, financial data, and other information provided and shared among the Manufacturers and PBMs, OptumInsight

analyzes the profitability of the at-issue price increases and formulary construction, to the benefit of all Defendants. (¶ 188). As a result of these coordinated efforts, the Scheme has generated enormous profits for OptumInsight and the other Defendants at the expense of Illinois diabetics and the State. (¶¶ 351, 380).

## ARGUMENT

This Court has personal jurisdiction over UHG and OptumInsight, and their Rule 12(b)(2) motion should be denied.

## I. Legal Standard

"A federal court may exercise personal jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause." *Lexington Ins. Co. v. Hotai Ins. Co., LTD.*, 938 F.3d 874, 878 (7th Cir. 2019). Illinois' long-arm statute is co-extensive with federal constitutional requirements; therefore, the Court must only determine if the exercise of personal jurisdiction over UHG and OptumInsight comports with due process. *John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 695 (7th Cir. 2018).

"[W]here, as here, [personal jurisdiction] is raised on a motion to dismiss, the plaintiff need only make a prima facie showing of jurisdictional facts." *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). In evaluating the *prima facie* showing, the "plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citation omitted). The Court does not merely construe explicitly contradictory disputes in the plaintiff's favor; even ambiguities and uncertainties in a defendant's evidence are construed in a light most favorable to personal jurisdiction. *Rose v. Franchetti*, 713 F. Supp. 1203, 1205 n.1 (N.D. Ill. 1989). "District courts ruling on Rule 12(b)(2) motions . . . must perform a flexible, all-things-considered inquiry into whether the defendant has 'purposefully avail[ed]' itself of the forum State's laws such that it

would be 'fair' to subject it to suit there." *Riverdale Plating & Heat Treating, LLC v. Andre Corp.*, 2015 WL 5921896, at \*3 (N.D. Ill. Oct. 9, 2015) (alteration in original).

## II.     UHG and OptumInsight Completely Ignore Key Allegations.

UHG and OptumInsight purport to go paragraph-by-paragraph through the complaint allegations pertaining to them, to explain why each is insufficient to confer personal jurisdiction. (Dkt. 56 at 10-16).[2]

First, the State notes that "defendants' case-related contacts with Illinois must be viewed in the aggregate" – not individually. *Café Real Estate LLC v. VSP North Am. LLC*, 262 F. Supp. 3d 637, 640 (N.D. Ill. 2017). To the extent UHG and OptumInsight suggest that none of the State's allegations, standing alone, supports jurisdiction, its premise is flawed. *Id.*

UHG and OptumInsight also omit several factual allegations about their involvement in the Scheme. For example:

- **Paragraphs 203 and 308** describe mergers and acquisitions through which UHG strategically built OptumRx into a company with the market power to drive the Scheme.

- **Paragraph 322** alleges that officers and high-level representatives of each PBM Defendant – specifically including OptumInsight – attended PCMA conferences each year and engaged in private meetings in furtherance of the Scheme.

- **Paragraph 350** alleges that OptumInsight compiled, analyzed, and shared data among the Defendants, such as market data, medical efficacy studies, and financial

---

[2] With regard to Paragraph 180, UHG alleges that the State mischaracterized a statement in its 2020 Sustainability Report. (Dkt. 56 at 12). However, the report was issued by UHG, and substitution of UHG for "we" in the statement is reasonable in light of the State's factual allegations about UHG's direct involvement in PBM services.

data, to enable Defendants to coordinate to set the false prices and construct formularies that would maximize profits for all Defendants.

- **Paragraph 350** also cites evidence from the United States Senate investigation revealing that UHG received extra Manufacturer Payments for converting its clients to formularies favoring Manufacturer Eli Lilly's drugs, and, as a result, UHG's "leadership committee" worked with Lilly to convert "massive" numbers of diabetics to Lilly drugs. This sort of "non-medical switching," from one diabetes drug to another based on formulary changes, has been reported by Illinois pharmacists and diabetes educators and results in increased health problems and costs for Illinois diabetics. (¶ 465-67).

UHG and OptumInsight addressed none of these allegations and they are therefore uncontroverted.

## III. The State's Factual Allegations Are Uncontested, and Must Be Accepted As True.

As set forth above, the complaint alleges more than sufficient facts to demonstrate UHG and OptumInsight's suit-related contacts with the State. It is telling that, while UHG and OptumInsight attempt to minimize the State's allegations, mischaracterizing the claims as being based only on their capacity as OptumRx's parent and affiliate, (Dkt. 56 at 5), they do not provide any affidavit or evidence to contradict the allegations. As a result, the allegations of the complaint are taken as true. *Leong v. SAP Am., Inc.*, 901 F. Supp. 2d 1058, 1061 (N.D. Ill. 2012) (in ruling on a 12(b)(2) motion, "[t]he Court must accept the plaintiff's uncontroverted allegations as true").

## IV. The Uncontroverted Facts Satisfy Federal Due Process for Specific Personal Jurisdiction Over UHG and OptumInsight.

The State's allegations are sufficient to support the exercise of specific personal jurisdiction over UHG and OptumInsight based on their own involvement in the Scheme and

contacts with Illinois.[3] The State alleges that both had suit-related contacts in Illinois. Moreover, their actions taken elsewhere were purposely directed at Illinois and had a foreseeable and intended effect in Illinois, thus subjecting them to jurisdiction here.

Federal due process requires a defendant have "such contacts with the forum State that the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)). "[J]urisdiction cannot be avoided merely because the defendant did not physically enter the forum State." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotations omitted). The key question is whether the defendant had minimum contacts and "should reasonably anticipate being haled into court there." *Id.* (internal quotations omitted).

The Seventh Circuit considers three elements to evaluate whether the exercise of specific jurisdiction comports with due process:

> (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice.

*Felland*, 682 F.3d at 673 (citations omitted).

### A.    UHG and OptumInsight purposefully directed their activities at Illinois.

"Where a plaintiff's claim is for an intentional tort, the inquiry focuses on whether the conduct underlying the claim[] was purposely directed at the forum state." *Felland*, 692 F.3d at 674 (citations and internal quotations omitted). The Seventh Circuit applies the effects test

---

[3] The State does not contend that this Court has general jurisdiction over either Defendant.

established by *Calder v. Jones*, 465 U.S. 783 (1984), to analyze purposeful direction. *Id.* It has "distilled three requirements from *Calder* for determining whether conduct was 'purposefully directed' at the forum state":

> (1) intentional conduct (or 'intentional and allegedly tortious conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt – that is, the plaintiff would be injured – in the forum state.

*Felland*, 692 F.3d at 674-75 (citation omitted). "If the plaintiff makes these three showings, he has established that the defendant purposefully directed his activity at the forum state." *Id.* at 675 (internal quotations omitted).

### 1. UHG and OptumInsight's conduct was both intentional and tortious.

The Seventh Circuit has noted a circuit split on whether the first prong of the *Calder* test requires conduct that is only intentional, or intentional and tortious. *Tamburo*, 601 F.3d at 704. It has not taken a side, however, because the plaintiffs' allegations in the cases before it met the requirements of both intent and tortiousness. *Id.*; *Felland*, F.3d at 674, n.2. The same is true here.

As alleged by the State, UHG was directly involved in PBM services, pharmacy services, formulary construction, mail order pharmacy services, and Manufacturer Payments in furtherance of the Insulin Pricing Scheme, and publicly touted its involvement in those functions, though misrepresenting its aims. (¶¶ 179-83, 197, 206). UHG specifically offered PBM services in Illinois, created formularies for use in Illinois, and received Manufacturer Payments based on its formularies. (¶¶ 205-10, 350). As for OptumInsight, the State alleged that it provided Illinois data and analysis which allowed the Manufacturers to target Illinois diabetics and maximize the Scheme's profits in Illinois, (¶¶ 188-89, 191, 193), and coordinated with other Defendants in furtherance of the Scheme (¶¶ 189-92, 322, 350). This conduct was ongoing throughout the relevant period, and plainly constitutes intentional acts by UHG and OptumInsight. Further, by

carrying out these functions in the manner alleged by the State, UHG and OptumInsight's intentional conduct was also tortious.

The State further alleges that UHG and OptumInsight were members of the PCMA and exerted control over the PCMA. (¶ 320). It alleges that the PCMA, under their control, brought numerous lawsuits and lobbying campaigns to block drug pricing transparency efforts, and block rebate regulations that would impede the Scheme. (¶ 330). UHG and OptumInsight engaged in these efforts to conceal the Insulin Pricing Scheme. (*Id.*). These acts by UHG and OptumInsight are also intentional and tortious.

### 2. UHG and OptumInsight's conduct was expressly aimed at Illinois.

In *BRABUS GmbH v. Individuals Identified on Schedule A Hereto*, the defendant online retailer disputed personal jurisdiction for claims that it attempted to sell counterfeit goods into Illinois. 2022 WL 7501046, at *2 (N.D. Ill. Oct. 13, 2022) (Seeger, J.). The record included (1) a screenshot showing the retailer was willing to sell to a buyer in Illinois, and (2) a chat-log confirming the retailer could ship a product to Illinois and providing a quote on the seller's price to ship to that zip code. *Id.* at *3. The Court held that:

> Those communications are more than enough to show purposeful availment. Defendant was ready, willing, and able to ship products to a specific address in the Chicagoland suburbs. It purposefully directed its actions toward Illinois. Defendant subjected itself to jurisdiction here by demonstrating a willingness to sell products here.

*Id. See also NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 622 (7th Cir. 2022) (reiterating prior opinion that, when a company stands ready to do business with Illinois residents, that is a key fact in finding contacts sufficient to satisfy due process).

UHG and OptumInsight cite extensively to *Walden v. Fiore*, 571 U.S. 277 (2014), suggesting that its suit-related conduct does not connect it to Illinois. (*See generally* Dkt. 56). However, the facts of *Walden* are highly distinguishable from the facts alleged here. The defendant

in *Walden* was a law enforcement officer working at the Atlanta airport as part of a drug interdiction program. *Walden*, 51 U.S. at 279. The officer, in Atlanta, seized cash of questionable origin from the plaintiffs, who happened to be residents of Nevada traveling through the Atlanta airport. *Id.* at 280. Because the officer had acted entirely in Georgia, in no way targeting Nevada, the Supreme Court held that Nevada lacked jurisdiction. *Id.* at 291.

Here, in direct contrast to *Walden*, UHG intentionally provided PBM services *to Illinoisans*, created formularies for use *in Illinois*, and dispensed the at-issue drugs *to Illinoisans in Illinois*; and OptumInsight provided *Illinois* data and analysis to maximize the Scheme's profits from *Illinois*. UHG and OptumInsight also intentionally, through the PCMA, brought lawsuits and campaigns to perpetuate the Scheme and hide it from the State and Illinoisans. Each of these intentional acts was expressly aimed at Illinois. UHG and OptumInsight's Illinois-aimed conduct is markedly more extensive than the contacts alleged in *BRABUS* and *NBA Properties*, where this Court and the Seventh Circuit found jurisdiction proper. *See BRABUS*, 2022 WL 7501046, at *3 (sufficient basis for jurisdiction based on *willingness* to sell into Illinois, without evidence of actual sale); *NBA Properties*, 46 F.4th at 617-18 (single online sale to Illinois sufficient to support jurisdiction, even where the sale was to an investigator and defendant submitted an affidavit stating it never made any other sales to Illinois residents).

Whether its intentional acts were also aimed elsewhere (Dkt. 56 at 11) is beside the point. *Ford*, 141 S.Ct. at 1027 (explaining that if a company's business deliberately extended into a particular state, that state's courts may exercise jurisdiction, even if the company's business *also* deliberately extended into other states). *See also BRABUS*, 2022 WL 7501046, at *3 (jurisdiction found without any allegation that Illinois was exclusive targeted by online retailer); *NBA Properties*, 46 F.4th at 623 (reaffirming "[t]here is no per se requirement that the defendant

*especially* target the forum in its business activity" (emphasis added) (citation and internal quotations omitted)); *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 428 (7th Cir. 2010) (finding purposeful availment, despite lack of evidence that GoDaddy specifically targeted advertising at Illinois, because "it is easy to infer that GoDaddy's national marketing campaign is intended to reach as large an audience as possible, including the 13 million potential customers in the nation's fifth most populous state.").

Whether the executive meetings establishing the Scheme occurred elsewhere, (Dkt. 56 at 13), is also beside the point. Actions taken in furtherance of a scheme to defraud are jurisdictionally relevant, even if they occur after the scheme is devised and agreed. *See Felland*, 682 F.3d at 675-76 (citing Seventh Circuit and Northern District of Illinois cases, and finding it "well established" that minimum contacts analysis includes conduct following initial tortious acts, where the subsequent conduct is "part of a larger scheme to defraud"). The acts UHG and OptumInsight aimed at Illinois *were* the carrying out of the Scheme to defraud.

The State's uncontroverted allegations establish express aiming by both UHG and OptumInsight.

### 3. UHG and OptumInsight knew that the State and Illinois diabetics would be injured in Illinois.

The final prong of the effects test asks whether the defendant knew injury would occur in the forum state. *Felland*, 692 F.3d at 674-75 (citation omitted). UHG and OptumInsight cannot plausibly deny knowledge that their conduct in analyzing data to further the Scheme, providing PBM services, constructing formularies, dispensing the at-issue drugs, and blocking transparency was likely to cause harm to Illinoisans, in Illinois, through falsely inflated prices which Illinois diabetics were forced to pay. Indeed, its acts were *designed* to have that effect, and UHG and OptumInsight profited from the harm to Illinois.

UHG and OptumInsight are "aware that [they] earn[] many millions of dollars annually from Illinois customers, and [they] cannot be unhappy to have had such success in the state. [Their] contacts cannot fairly be described as random, fortuitous, or attenuated." *GoDaddy*, 623 F.3d at 428-29.

Because UHG and OptumInsight purposefully directed their activities at Illinois, the first factor of the federal due process analysis is satisfied.

**B.     UHG and OptumInsight's contacts with Illinois directly relate to the State's claims against them.**

As to the second factor, the State's claims must also "arise out of or relate to the defendant's contacts with the forum." *Ford*, 141 S. Ct. at 1026. The *Ford* Court recently reiterated that a defendant's in-state contacts need only "relate to" the litigation—a causative relationship is not necessary. *Id.* Here, UHG through its work as an Illinois PBM utilized the false prices arising from the Insulin Pricing Scheme and knowingly insisted that Illinois payors pay for the at-issue drugs on the basis of those prices, while concealing its role in the generation of the prices. (¶¶ 198, 205-10). UHG also directly controlled, assisted, and aided its subsidiaries in violating the ICFA and UDTPA, with knowledge of the facts giving rise to the violations (¶¶ 179, 182, 197-98, 206-10), purposefully availing itself of the privileges of conducting business in Illinois.[4] OptumInsight's analyses of Illinois data were intended to maximize the Scheme's profitability in Illinois. (¶¶ 188-89, 350). The State's claims against both Defendants directly relate to their contacts with Illinois.

As the United States Supreme Court recently clarified, a company "purposefully availing itself" of a certain market in a particular state "has clear notice of its exposure in that State" to

---

[4] As discussed in the State's Opposition to the PBM Defendants' Rule 12(b)(6) Motion, a parent company can be directly liable under Illinois law if it is a participant in its subsidiaries' conduct, as the State alleges against UHG. *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 237 (Ill. 2007).

lawsuits related to harms caused by that product or conduct. *See Ford*, 141 S. Ct. at 1027. Put another way, if a suit arises from efforts by a company "to serve, *directly or indirectly*, the market for its product in several or all other States, it is not unreasonable to subject it to suit in one of those States" if its product (or service) causes an injury. *Id.* (emphasis supplied) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Here, the allegations of the complaint make clear that UHG and OptumInsight acted in Illinois, and successfully exploited the Illinois market for their financial gain. By serving as a PBM in Illinois, and doing so in furtherance of the Insulin Pricing Scheme, UHG played an active role in causing the harm underlying the State's claims. OptumInsight's conduct in providing data analysis foundational to the Scheme in Illinois is likewise directly related to the State's claims. Both UHG and OptumInsight had clear notice that they would be subject to the state's jurisdiction.

The State and Illinois diabetics were injured by UHG and OptumInsight's activities, and "[a]n individual injured in [Illinois] need not go to [another jurisdiction] to seek redress from persons who, though remaining in [another jurisdiction], knowingly cause the injury in [Illinois]." *Calder*, 465 U.S. at 790.

### C. This Court's exercise of jurisdiction comports with fair play and substantial justice.

Having purposefully directed their activities at Illinois, it is UHG and OptumInsight's burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Northwest 1 Trucking Inc. v. Haro,* 613 F. Supp. 3d 1081, 1094 (N.D. Ill. 2020) (Seeger, J.) (quoting *Burger King*, 471 U.S. at 477) (internal quotations omitted). It cannot do so. The Court considers the following factors:

> (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of

controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Id.*

Here, every consideration supports jurisdiction:

- Factor 1. UHG and OptumInsight cannot claim any burden "greater than what courts routinely tolerate in the exercise of specific jurisdiction over foreign parties." *See id.* (citation and internal quotations omitted). Indeed, the UHG corporate family ranks fifth on the Fortune 500 list, and UHG and OptumInsight's business is national in scope. *See GoDaddy*, 623 F.3d at 432 (finding the burden to defend in Illinois was minimal for a corporation that operates on a national scale). Further, they share counsel with their affiliate OptumRx, Inc., which is not contesting personal jurisdiction.

- Factor 2. Illinois generally "has a significant interest in providing a forum for its residents to seek relief when they suffer harm in Illinois from a wrong that occurred at least in part in Illinois." *Id.* (citation and internal quotations omitted). Here, where Illinois' Attorney General brings claims under Illinois' ICFA and Illinois' UDTPA, Illinois' interest is not only strong, it is *exclusive*.

- Factor 3. The State has a strong interest in obtaining convenient and effective relief, which is best served through adjudication before this Court, along with the claims against the other Defendants, including OptumRx, Inc., which do not contest this Court's jurisdiction, rather than forcing the State to pursue its claims against UHG and OptumInsight separately in a different forum. Further, "a finding that [UHG and OptumInsight are] not subject to personal jurisdiction in a forum [they have] so thoroughly exploited would create significant barriers to effective relief for similarly situated plaintiffs with more limited resources." *GoDaddy*, 623 F.3d at 432.

- Factor 4. For the same reasons, the interstate judicial system's interest in efficient resolution of controversies is also best served by this Court's adjudication of the State's claims against UHG and OptumInsight.

- Factor 5. All States' collective interest in furthering substantive social policies – specifically, their interest in facilitating enforcement of consumer protections – is served by the Court's exercise of jurisdiction over UHG and OptumInsight in this matter.

The State's uncontroverted allegations are more than adequate to afford this Court personal jurisdiction over UHG and OptumInsight to adjudicate the State's claims. To borrow this Court's words, "Litigating here may not be convenient, but that comes with the territory . . . When the business is selling fake products abroad, part of the cost of doing business is getting sued abroad." *BRABUS*, 2022 WL 7501046, at *3.

## V. Alternatively, the State is Entitled to Jurisdictional Discovery Regarding UHG and OptumInsight's Illinois Contacts, Involvement in the Scheme, and Corporate Structure.

The State has, at minimum, shown enough to warrant jurisdictional discovery related to UHG and OptumInsight's involvement in the Insulin Pricing Scheme. UHG and OptumInsight attempt to obfuscate and minimize their role in the Scheme by asserting that they are merely "corporate parent" or "affiliate," respectively (Dkt. 56 at 5). But currently, any information that would further illuminate their role in the Scheme and the corporate relationship or lack of corporate separateness between UHG, OptumInsight, and OptumRx, Inc. is in the sole possession of those Defendants.

"Courts generally will grant jurisdictional discovery if the plaintiff 'can show that the factual record is at least ambiguous or unclear on the jurisdiction issue.'" *Gilman Opco LLC v. Lanman Oil Co.*, 2014 WL 1284499, at *6 (N.D. Ill. Mar. 28, 2014) (citation omitted). To be sure,

a "plaintiff does not have an automatic right" to jurisdictional discovery; there must be some "colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Id.* That standard, however, "is low." *Id.* A plaintiff only fails it where there are "'bare,' 'attenuated,' or 'unsupported' assertions of personal jurisdiction" or "clearly frivolous" claims. *Id.* (citation omitted).

Here, the State's allegations are not "bare" or "clearly frivolous." The State has made factual allegations about UHG and OptumInsight's roles in the Scheme, and the ways that they targeted Illinois – allegations which UHG and OptumInsight did not controvert. This meets the "low" standard for jurisdictional discovery. After the nonmovant has put forth evidence of the defendant's contacts with the forum, the district court should not dismiss the action without permitting jurisdictional discovery. *Kosar v. Columbia Sussex Mgmt., LLC*, 2021 WL 4499494, at *2 (N.D. Ill. June 1, 2021) ("if the plaintiff can show an ambiguity exists or that some jurisdictional facts are unclear," discovery is warranted).

The State has established that this Court may exercise personal jurisdiction over UHG and OptumInsight because they, individually, have sufficient minimum contacts with Illinois. Yet, if this Court decides otherwise, it is appropriate to allow a limited period of jurisdictional discovery to accurately assess their involvement in the Insulin Pricing Scheme in Illinois.

## CONCLUSION

For all the reasons discussed above, this Court should deny UHG and OptumInsight's Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction.

RESPECTFULLY SUBMITTED this the 6th day of April, 2023.

> THE STATE OF ILLINOIS, by KWAME RAOUL, ATTORNEY GENERAL OF ILLINOIS

/s/ Tanya D. Ellis

Edwin S. Gault, Jr., IL Bar # 6314552
Walter G. Watkins, III., Bar ID # 100314
Tanya D. Ellis, Bar ID # 101525
FORMAN WATKINS & KRUTZ LLP
210 East Capitol Street, Suite 2200
Jackson, MS 39201-2375
Tel: (601) 960-8600
Fax: (601) 960-8613
Win.Gault@formanwatkins.com
Tanya.Ellis@formanwatkins.com
Trey.Watkins@formanwatkins.com


David F. Buysse, IL Bar # 3126915
Deputy Chief, Public Interest Division
Illinois Attorney General's Office
100 W. Randolph Street – 12th Floor
Tel: (312) 590-7844
david.buysse@ilag.gov

Darren Kinkead, IL Bar # 6304847
Deputy Chief, Special Litigation Bureau
Office of the Attorney General of Illinois
100 W. Randolph Street – 11th Floor
Tel: (773) 590-6967
darren.kinkead@ilag.gov

Matthew C. McDonald, Bar ID # 105966
DAVID NUTT & ASSOCIATES
605 Crescent Blvd, Suite 200
Ridgeland, MS 39157
Tel: (601) 898-7302
mattm@davidnutt.com

Joanne Cicala *(pro hac vice)*
Josh Wackerly *(pro hac vice)*
R. Johan Conrod *(pro hac vice)*
THE CICALA LAW FIRM PLLC
101 College Street
Dripping Springs, TX 78620
Tel: (512) 275-6550
joanne@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com

**<u>Certificate of Service</u>**

I hereby certify that on April 6, 2023, I electronically filed the foregoing, Plaintiff's Memorandum in Opposition to UnitedHealth Group Incorporated's and OptumInsight, Inc.'s Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction, with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Tanya D. Ellis*
Tanya D. Ellis
