## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THE STATE OF ILLINOIS, EX REL., KWAME RAOUL, ATTORNEY GENERAL,<br><br>Plaintiff,<br><br>v.<br><br>ELI LILLY AND COMPANY; NOVO NORDISK INC.; SANOFI-AVENTIS U.S. LLC; EVERNORTH HEALTH, INC. (FORMERLY EXPRESS SCRIPTS HOLDING COMPANY); EXPRESS SCRIPTS, INC., EXPRESS SCRIPTS ADMINISTRATORS, LLC; ESI MAIL PHARMACY, INC.; EXPRESS SCRIPTS PHARMACY, INC.; MEDCO HEALTH SOLUTIONS, INC.; CVS HEALTH CORPORATION; CVS PHARMACY, INC; CAREMARK RX, L.L.C.; CAREMARKPCS HEALTH, L.L.C.; CAREMARK, L.L.C.; UNITEDHEALTH GROUP, INC.; OPTUMRX INC.; AND OPTUMINSIGHT, INC.,<br><br>Defendants. | Case No. 1:23-CV-00170 |

## REPLY IN SUPPORT OF MANUFACTURERS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(B)(6)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

    I.     The Safe Harbor Bars The Consumer Fraud Claim. ................................................. 2

    II.    Illinois Has Failed To Plead A Consumer Fraud Act Claim. ................................. 6

         A.     Illinois Has Failed To Plead Deception. ..................................................... 6

         B.     Illinois Has Failed To Plead Unfairness. .................................................... 8

    III.   Illinois Cannot Salvage Its Unjust Enrichment Claim. ........................................ 10

    IV.   Illinois's Claims Are Time-Barred. ..................................................................... 12

         A.     Illinois Was On Notice Of Its Claims More Than Five Years Ago .......... 12

         B.     Illinois's Claims Are Subject To The Statute Of Limitations .................. 13

         C.     Illinois Has Not Alleged A Continuing Violation. ................................... 14

         D.     Illinois Has Not Alleged Fraudulent Concealment. .................................. 15

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Laboratories v. Alra Laboratories, Inc.*,
    1993 WL 293995 (N.D. Ill. Aug. 4, 1993) .......................................................................4

*In re Arthur J. Gallagher Data Breach Litig.*,
    2022 WL 4535092 (N.D. Ill. Sept. 28, 2022) ...........................................................11

*Ass'n Ben. Servs.,Inc. v. Caremark RX, Inc.*,
    493 F.3d 841 (7th Cir. 2007) .....................................................................................10

*Banco Panamericano, Inc. v. City of Peoria, Illinois*,
    880 F.3d 329 (7th Cir. 2018) .....................................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................15

*Blacke v. Indus. Comm'n*,
    644 N.E.2d 23 (Ill. App. Ct. 1994) ...........................................................................13

*Blythe Holdings, Inc. v. DeAngelis*,
    750 F.3d 653 (7th Cir. 2014) .....................................................................................10

*Bober v. Glaxo Wellcome PLC*,
    246 F.3d 934 (7th Cir. 2001) .......................................................................................2

*Champaign Cnty. Forest Pres. Dist. v. King*,
    683 N.E.2d 980 (Ill. App. Ct. 1997) .........................................................................13

*Ciampi v. Ogden Chrysler Plymouth, Inc*,
    634 N.E. 2d 448 (Ill. App. Ct. 1994) ..........................................................................7

*City of Miami v. Eli Lilly & Co.*,
    2022 WL 198028 (S.D. Fla. Jan. 21, 2022) .................................................................5

*Clark v. Tap Pharmaceutical Products, Inc.*,
    798 N.E.2d 123 (Ill. Ct. App. 2003) ............................................................................7

*Cox v. Ret. Bd. of the Cnty. Employees'*,
    2021 WL 2186178 (N.D. Ill. May 29, 2021) ...............................................................3

*De Gorter v. Fed. Trade Comm'n*,
    244 F.2d 270 (9th Cir. 1957) .......................................................................................6

*In re Direct Purchaser Insulin Pricing Litigation*,
2021 WL 2886216 ..................................................................................................7

*People ex rel. Fahner v. Hedrich*,
438 N.E.2d 924 (Ill. App. Ct. 1982) ......................................................................9

*First Sav. Bank of Hegewisch v. Orchowski*,
1994 WL 148668 (N.D. Ill. Apr. 21, 1994) ...........................................................11

*Galvan v. Nw. Mem'l Hosp.*,
888 N.E.2d 529 (Ill. App. Ct. 2008) ......................................................................9

*In re Gaslight Club, Inc.*,
167 B.R. 507 (Bankr. N.D. Ill. 1994) ....................................................................14

*Giant Food, Inc. v. FTC*,
322 F.2d 977 (D.C. Cir. 1963) ...............................................................................6

*Greenberger v. GEICO General Ins. Co.*,
2006 WL 8461731 (N.D. Ill. Aug. 18, 2006) .........................................................4

*Grimaldi v. Webb*,
668 N.E. 2d 39 (Ill. App. Ct. 1996) .......................................................................7

*Halperin v. Int'l Web Services, LLC*,
123 F. Supp. 3d 999 (N.D. Ill. 2015) .....................................................................8

*People ex rel. Hartigan v. Agri-Chain Prod., Inc.*,
586 N.E.2d 535 (Ill. App. Ct. 1991) ................................................................13, 14

*Heiman v. Bimbo Foods Bakeries Distribution Co.*,
902 F.3d 715 (7th Cir. 2018) .................................................................................12

*Hyon Waste Mgmt. Servs., Inc. v. City of Chicago*,
574 N.E.2d 129 (Ill. App. Ct. 1991) ................................................................14, 15

*Indep. Tr. Corp. v. Fid. Nat. Title Ins. Co. of N.Y.*,
577 F. Supp. 2d 1023 (N.D. Ill. 2008) ..................................................................11

*Jackson v. Kraft Heinz Food Co.*,
2022 WL 4591749 (N.D. Ill. Aug. 3, 2022) ...........................................................7

*Johnson v. Marshall Field & Co.*,
312 N.E.2d 271 (Ill. 1974) ..................................................................................3, 4

*Minnesota v. Sanofi-Aventis U.S. LLC*,
2020 WL 2394155 (D.N.J. March 31, 2020) ..........................................................5

*MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC,*
   2019 WL 1418129 (D.N.J. Mar. 29, 2019)...........................................................................7

*Mucha v. Vill. of Oak Brook*,
   2008 WL 4686156 (N.D. Ill. May 29, 2008) ........................................................................2

*Osman v. Ford Motor Co.*,
   833 N.E.2d 1011 (Ill. App. Ct. 2005) ..................................................................................4

*Page v. Alliant Credit Union*,
   2021 WL 1688176 (N.D. Ill. Apr. 29, 2021) ........................................................................9

*Pavlik v. Kornhaber*,
   761 N.E.2d 175 (Ill. App. Ct. 2001) ..................................................................................14

*Price v. Philip Morris, Inc.*,
   848 N.E.2d 1 (Ill. 2005) ......................................................................................................4

*RBS Citizens, N.A. v. Bentley Motors, Inc.*,
   2012 WL 1565457 (N.D. Ill. May 2, 2012) ........................................................................10

*Regina Corp. v. FTC*,
   322 F.2d 765 (3d Cir. 1963)................................................................................................6

*Rodriguez v. Ford Motor Company*,
   596 F. Supp. 3d 1050 (N.D. Ill. 2022) ................................................................................8

*Sanders v. Lincoln Service Corp.*,
   1993 WL 112543 (N.D. Ill. April 5, 1993)............................................................................4

*Seaman v. Thompson Elecs. Co.*,
   758 N.E.2d 454 (Ill. App. Ct. 2001) ..................................................................................13

*Siegel v. Shell Oil Co.*,
   612 F.3d 932 (7th Cir. 2010) ..............................................................................................8

*Spiegel, Inc. v. FTC*,
   411 F.2d 481 (7th Cir. 1969) ..............................................................................................6

*State of Illinois v. Tri-Star Industrial Lighting, Inc.*,
   2000 U.S. Dist. LEXIS 14948 (N.D. Ill. Oct. 11, 2000)......................................................13

*Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc.*,
   573 N.E.2d 1370 (Ill. App. Ct. 1991) ......................................................................5, 6, 12

*Tomlinson v. Goldman, Sachs & Co.*,
   682 F. Supp. 2d 845 (N.D. Ill. 2009) ................................................................................14

*Toulon v. Con't Cas. Co.,*
  2015 WL 493225 (N.D. Ill. Aug. 19, 2015) ...................................................5

*Toulon v. Continental Casualty Co.,*
  877 F.3d 725 (7th Cir. 2017) .................................................................8, 9

*People ex rel. Ill. Dept. of Labor v. Tri State Tours, Inc.,*
  795 N.E.2d 990 (Ill. App. Ct. 2003) .......................................................14

*Tri-Plex Tech. Services, Ltd. v. Jon-Don, LLC,*
  2022 WL 16709517 (Ill. Ct. App. Nov. 4, 2022) .......................................5

*Village of DePue. v. Viacom Int'l, Inc.,*
  713 F. Supp. 2d 774 (C.D. Ill. 2010) .....................................................13

*Zurich Ins. Co. v. Lifschultz Fast Freight, Inc.,*
  1991 WL 49577 (N.D. Ill. Apr. 4, 1991) .................................................10

**Statutes**

42 U.S.C. §1395w-3a...........................................................................3, 4, 5, 6

215 Ill. Comp. Stat. 5/356z.41 ..............................................................3, 10

215 Ill. Comp. Stat. 5/513b1(b)(5)...............................................................3

735 Ill. Comp. Stat. 5/13-205......................................................................13

815 Ill. Comp. Stat. 505/10b(1) ...........................................................2, 3, 5

815 Ill. Comp. Stat. 505/3...........................................................................14

815 Ill. Comp. Stat. 505/4...........................................................................14

815 Ill. Comp. Stat. 510/4.............................................................................2

**Other Authorities**

*Fraud and Abuse: Removal of Safe Harbor Protection for Rebates Involving*
  *Prescription Pharmaceuticals*, 85 Fed. Reg. 76666 (Nov. 30, 2020) .......5

Matthew Herper, *Inside the Secret World of Drug Company Rebates*, FORBES
  (May 10, 2012).........................................................................................15

# INTRODUCTION

Illinois's opposition confirms the implausibility of its theory of wrongdoing as to Manufacturers. The State claims that insulin list prices are somehow deceptive and unfair because they do not reflect the rebates Manufacturers must pay to secure inclusion on PBM formularies. But Illinois cannot deny that both federal and state law authorize this system. Nor does Illinois deny that public sources—including the media, Congress, Manufacturers, other litigants, and Illinois's own outside counsel—have long made it known that Manufacturers offer rebates on list price to secure formulary inclusion. And though Illinois offers a series of misdirections to avoid those indisputable facts, they do not salvage the complaint.

*First,* the State's Consumer Fraud Act ("CFA") claim is foreclosed by the Act's safe-harbor provision. Congress has instructed Manufacturers not to subtract rebates when reporting list prices, a directive which is incompatible with the State's theory that would require Manufacturers to do just that. The Illinois legislature has also addressed the specific subject of insulin pricing, and decided to regulate insurers, not Manufacturers. Each fact independently confirms that the safe harbor forbids Illinois's attempt to impose higher standards than the law requires.

*Second,* Illinois has not adequately alleged that Manufacturers' practices were deceptive or unfair. As its complaint explains, Manufacturers' list prices are exactly what they purport to be—the wholesale acquisition cost of their medications—and thus cannot have deceived anyone. That is especially true in light of the federal statute defining list prices, which is likely why Illinois says *nothing* about that statute in defending its deception theory.

Illinois also has no logical support for its unfairness claim. It concedes that high prices alone cannot state an unfairness claim, yet attacks Manufacturers' prices as "unconscionably disproportionate." To reconcile that conflict, the State points to cases holding that it is unfair to charge something but provide nothing. But Manufacturers indisputably do provide

1

something: insulin. Illinois further fails to allege that Manufacturers' rebate payments lack countervailing benefits. But as the complaint explains, rebates ensure insulins are available to 80% of Illinoisans through their insurance because PBMs control whether they are on formularies.

*Third*, Illinois cannot maintain its unjust enrichment claim. This claim necessarily fails alongside the statutory claim. It is also deficient because the State concedes that contracts govern the complained-of insulin prices. The fact that that those contracts are not with Manufacturers is irrelevant, because under Illinois law, a contract can bar claims against third parties. Illinois also has no real answer to the reality that Manufacturers do not receive a benefit from Illinois consumers, as would be necessary to sustain this claim.

*Fourth*, the statute of limitations bars this suit. Illinois does not deny the existence of all the publications, lawsuits, and disclosures putting it on notice of its claims years ago. Nor does it deny that *its own lawyers* managed to bring a near-identical (and since-dismissed) suit on behalf of another government plaintiff long before the release of the Senate Insulin Report that Illinois now insists was critical to putting it on notice. Unable to seriously dispute notice, Illinois retreats to denying that the statute of limitations applies and arguing in conclusory fashion that the Court should overlook its lack of diligence. These arguments fail as a matter of law.

## ARGUMENT

## I.    THE SAFE HARBOR BARS THE CONSUMER FRAUD CLAIM.

Illinois acknowledges that the CFA and the Deceptive Trade Practice Act contain safe harbors for "actions or transactions specifically authorized by" or "conduct in compliance with" federal or state law, 815 Ill. Comp. Stat. 505/10b(1); *id.* 510/4(1). And though it claims the safe harbor is an affirmative defense, dismissal on this basis is appropriate if "the plaintiff has alleged facts conclusively supporting the applicability of the defense." *Mucha v. Vill. of Oak Brook*, 2008 WL 4686156, at *9 (N.D. Ill. May 29, 2008); *see also Bober v. Glaxo Wellcome PLC*, 246 F.3d

934, 942-43 (7th Cir. 2001) (affirming dismissal of Consumer Fraud claims under the safe harbor).

That is precisely the case here. Federal law tells Manufacturers how to report list prices: as the "price for the drug … *not including* prompt pay or other discounts, rebates or reductions in price." 42 U.S.C. §1395w-3a(c)(6)(B). And state law requires *insurers*—not Manufacturers—to cap insulin prices. Illinois thus cannot proceed on a theory that Manufacturers deceived anyone by publishing list prices calculated before rebate payments, or that they violated a non-existent obligation to cap their own prices.

In response, Illinois offers five objections. None addresses the *state* laws reflecting the Illinois legislature's policy on insulin pricing. Mot. at 10–12; 215 Ill. Comp. Stat. 5/513b1(b)(5); 215 Ill. Comp. Stat. 5/356z.41(c). Those laws require applying the safe harbor, so the opposition's failure to address them compels dismissal. *Cox v. Ret. Bd. of the Cnty. Employees'*, 2021 WL 2186178, at *25 n.18 (N.D. Ill. May 29, 2021) ("[Plaintiff] did not respond to the argument … , and thus it is waived."). The State's five incomplete arguments also fail on their own terms.

*First*, Illinois argues the safe harbor is not applicable to 42 U.S.C. § 1395w-3a because it is not a "<u>true</u> disclosure statute[]." Opp. at 17 (emphasis in original). But the safe harbor is not limited to "true disclosure statutes" (whatever that means). It simply requires authorization by or compliance with any "law[,]" "order[,]" "rule[,]" or "statute." 815 Ill. Comp. Stat. 505/10b(1); *id.* 510/4. Thus, where any law shows the legislature "contemplated" and did not "disapprov[e]" the challenged practice, it is within the safe harbor. *Johnson v. Marshall Field & Co.*, 312 N.E.2d 271, 276 (Ill. 1974).[1] Illinois courts unsurprisingly apply the safe harbor to non-"disclosure" statutes

---

[1] The State argues *Johnson* can be ignored because the legislature "specifically directed retailers to collect the tax in issue." Opp. at 20 n.20. The State is wrong. In *Johnson*, the plaintiff argued that it was deceptive for retailers to pass a tax onto customers. 312 N.E.2d at 274. The legislature authorized the tax, but did not "specifically direct[]," or explicitly permit, passing that tax onto customers. It merely "considered, without disapproving" that practice, which was sufficient for the application of the safe harbor. *Id.* at 276.

all the time. *See, e.g.*, *Johnson*, 312 N.E.2d at 276 (tax act); *Osman v. Ford Motor Co.*, 833 N.E.2d 1011, 1022 (Ill. App. Ct. 2005) (federal motor vehicle safety standard).

*Second*, the State invokes the principle that "where the fraud was 'active and direct', a defendant must demonstrate that its conduct was affirmatively and specifically authorized." *Toulon v. Con't Cas. Co.*, 2015 WL 4932255, at *5 (N.D. Ill. Aug. 18, 2015); Opp. at 8. But the State's case rests on what is really a theory of nondisclosure. Although Illinois frequently repeats the conclusion that list prices are "false," it never alleges that list prices are anything but what they purport to be: the Wholesale Acquisition Cost ("WAC") of insulin, *before* accounting for rebates and discounts. 42 U.S.C. §1395w-3a(c)(6)(B). Instead, its sole theory of falsity is that the Manufacturers *also* should have explained "how [they] arrive at a WAC price," or the relationship between list prices and net prices. Opp. at 18; Compl. ¶ 21. That is clearly a nondisclosure theory.

The cases Illinois cites illustrate the distinction. In *Price v. Philip Morris, Inc.*, plaintiffs alleged a falsity analogous to a "package label that promises 20 cigarettes but delivers only 19." 848 N.E.2d 1, 41 (Ill. 2005). And in *Abbott Laboratories v. Alra Laboratories, Inc.*, defendants falsely certified that a drug was covered by a patent. 1993 WL 293995, at *2 (N.D. Ill. Aug. 4, 1993); *see also Sanders v. Lincoln Service Corp.*, 1993 WL 112543, at *4 (N.D. Ill. Apr. 5, 1993) (defendant represented that a two-month escrow balance was "required by its contract," when a one-month balance was required).[2] Illinois does not allege an analogous false statement. Because its claim is "based on an alleged failure to disclose," "full compliance with applicable disclosure requirements is a defense." *Price*, 848 N.E.2d at 41.

*Third*, Illinois "question[s]" "whether the U.S. Department of Health and Human Services,

---

[2] In *Greenberger v. GEICO General Ins. Co.*, defendant was *not* "in compliance with any regulatory authority." 2006 WL 8461731, at *3 (N.D. Ill. Aug. 18, 2006). Illinois does not dispute that Manufacturers are in compliance with state and federal law.

which administers Medicare and Medicaid, is a 'relevant' regulatory body for purposes of the State's claims, which seek no recovery on behalf of Medicare or Medicaid recipients." Opp. at 20–21. But the complaint specifically identifies "the Medicare Part D program … [as] victims [*sic*]." Compl. ¶ 443. In any event, the safe harbor simply requires a law "administered by *any* regulatory body" or "*a* Federal, state or local governmental agency." 815 Ill. Comp. Stat. 505/10b(1); *id.* 510/4 (emphases added).[3]

*Fourth*, the State raises another "question" of "how the Medicare WAC methodology even applies to payments made to PBMs." Opp. at 21. This argument makes no sense. The prices Illinois challenges are the "Wholesale Acquisition Cost," Compl. ¶¶ 282–83, which are defined by statute as the "list price[s]" that Manufacturers charge "*to wholesalers or direct purchasers.*" 42 U.S.C. § 1395w-3a(c)(6)(B) (emphasis added). PBMs are not wholesalers or direct purchasers; they are "strangers" to Manufacturers' sales. Opp. at 21. Manufacturers thus cannot adjust the *Wholesale* Acquisition Cost to account for rebates to PBMs. Illinois's view is, apparently, that if a Manufacturer charges wholesalers $100 for a drug, and rebates $30 to a PBM, it should falsely report that it charges wholesalers $70 for the drug. Federal law prevents the Manufacturers from doing so, as the final rulemaking Illinois relies on illustrates. U.S. Dept. of Health and Human Services, *Fraud and Abuse: Removal of Safe Harbor Protection for Rebates Involving Prescription Pharmaceuticals*, 85 Fed. Reg. 76666, 76707 (Nov. 30, 2020) (giving examples where list price of $100 does not include $2 wholesaler discount or $30 PBM rebate), *cited at* Opp. at 21–22 n.23.

*Fifth*, Illinois suggests that the federal law is inapplicable because it "[a]t most …

---

[3] *Tri-Plex Tech. Services, Ltd. v. Jon-Don, LLC*, did not hold that OSHA was not a "relevant regulatory body." Opp. at 20 n.21 (citing 2022 WL 16709517, at *6-7 (Ill. Ct. App. Nov. 4, 2022)). The law at issue had a "savings clause" that "demonstrate[d] a clear intent to preserve and not preempt state tort law." The law here has no such limitation. Illinois's reliance on *City of Miami v. Eli Lilly & Co.*, 2022 WL 198028 (S.D. Fla. Jan. 21, 2022) and *Minnesota v. Sanofi-Aventis U.S. LLC*, 2020 WL 2394155 (D. N.J. March 31, 2020) is equally off-base, as no statute in either case contained a safe harbor.

recognizes the existence of 'rebates,' a narrow term that does not encompass all the Manufacturer Payments." Opp. at 20. This argument cannot be squared with the statute. Far from applying only to "rebates," the statute broadly explains that list price should "not includ[e] prompt pay *or* other discounts, rebates *or* reductions in price." § 1395w-3a(c)(6)(B) (emphases added). When Manufacturers report list price, they must report the *undiscounted, unreduced* price. That requirement is flatly incompatible with Illinois's theory.

## II. ILLINOIS HAS FAILED TO PLEAD A CONSUMER FRAUD ACT CLAIM.

### A. Illinois Has Failed To Plead Deception.

Manufacturers' motion explained that list prices cannot be false because they are exactly what they purport to be: the "wholesale acquisition cost[s]" of Manufacturers' drugs before accounting for rebates and discounts. Compl. ¶ 282. Illinois's only response—apart from rehashing conclusory assertions that "the reported prices are false, artificially inflated, and unlawful" (Opp. at 2, 7 & n.2)—is to cite cases for the uncontroversial proposition that false pricing is deceptive. But those cases only underscore what is absent here. In one group of cases, retailers picked an arbitrary number and claimed that the price was discounted from that number, which was not the "price at which an article … is openly and actively sold." *Spiegel, Inc. v. FTC*, 411 F.2d 481, 483 (7th Cir. 1969).[4] That has nothing to do with the allegations here: list prices are not arbitrary numbers, but the prices at which Manufacturers sell medications to wholesalers (excluding discounts). Compl. ¶ 282; Figure 12. And Manufacturers' price reporting complies with the on-point federal statute. Illinois *never* mentions this statute in discussing deception.

In a second group of cases, the defendant either concealed or affirmatively misrepresented

---

[4] *See also Giant Food, Inc. v. FTC*, 322 F.2d 977, 980–83 (D.C. Cir. 1963) ("mfr. List" prices weren't the usual and customary retail price); *Regina Corp. v. FTC*, 322 F.2d 765, 767–68 (3d Cir. 1963) ("suggested list prices" were not the "usual and customary" purchase price); *De Gorter v. FTC*, 244 F.2d 270, 281 (9th Cir. 1957) (clothing was given arbitrary price from which salespersons negotiated).

a product's price. In *Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc.*, for example, the defendant nursing home "issu[ed] bills to the residents … which indicated that those residents were being charged a specified amount for specified drugs, when in fact the charge … was only 85% of what the patients were required to pay." 573 N.E.2d 1370, 1377 (Ill. App. Ct. 1991).[5] Here, Manufacturers not only accurately disclosed their list prices, but did so in the precise manner that federal law anticipates—meaning that no one could have been deceived.

Illinois also cannot salvage its theory by citing insulin cases decided under different law. Opp. at 9 n.12. Some proceeded under RICO, and did not address the allegations here. *In re Direct Purchaser Insulin Pricing Litigation*, 2021 WL 2886216, at *14–16 (D.N.J. July 9, 2021). And none analyzes how Manufacturers' accurate statements of their wholesale prices can be false. *MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, for example, simply states that plaintiffs "alleged material, factual misrepresentations." 2019 WL 1418129, at *19 (D.N.J. Mar. 29, 2019) (New Jersey law). That does not explain how Manufacturers' statements are "untrue or impl[y] something false," as required under Illinois law. *Jackson v. Kraft Heinz Food Co.*, 2022 WL 4591749, at *4 (N.D. Ill. Aug. 3, 2022).

Finally, the opposition confirms that the complaint flunks Rule 9(b). Although Illinois denies "lump[ing Manufacturers] together," even in its opposition it speaks collectively of "[t]he Manufacturer Defendants" and "the Manufacturers' list prices." Opp. at 14. Illinois does not purport to identify any individual employee involved with those statements. Nor does it identify any specific list price increase, instead summarizing every increase for over 25 years. Opp. at 15

---

[5] *See also Clark v. Tap Pharm. Products, Inc.*, 798 N.E.2d 123, 126 (Ill. Ct. App. 2003) (defendant reported prices "significantly" different from what defendants actually charged); *Ciampi v. Ogden Chrysler Plymouth, Inc*, 634 N.E.2d 448, 452–53 (Ill. App. Ct. 1994) (defendant concealed car's sticker price); *Grimaldi v. Webb*, 668 N.E.2d 39, 41 (Ill. App. Ct. 1996) (defendant claimed $595 warranty among "Amounts Paid On [Customer's] Behalf" when warranty cost $150).

(citing, *e.g.*, Figure 3). Illinois does not argue—and did not allege—that *all* of those were "artificial," and never identifies *which* increases it alleges were artificial. Mot. at 17–18. Indeed, the only Manufacturer-specific statements that Illinois identifies are *true* statements, such as that insulin's price matters to diabetics. Opp. at 15. Rule 9(b) thus further dooms the State's claim. *See, e.g.*, *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1056 (N.D. Ill. 2022) (dismissing claim where plaintiffs failed to plead who, what, where, and how of alleged deceptive statements).

### B.      Illinois Has Failed To Plead Unfairness.

The Court should also dismiss the unfairness claim. The State concedes that Illinois law does not recognize unfairness claims predicated solely on high prices. Opp. at 10 ("[A]n unconscionably high price, standing alone, is insufficient … ."); Mot. at 18, 20–21. And it admits the standard for unfairness takes into account three factors: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers." *Toulon v. Cont'l Casualty Co.*, 877 F.3d 725, 740 (7th Cir. 2017). Illinois fails to plead all three.

Start with substantial injury. The State cannot show any such injury to consumers because it does not contest that Manufacturers' practices produce "countervailing benefits." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). As the complaint explains, PBMs "control" whether insulin is "available to 80% of Illinois's citizens," and rebates ensure those medicines are included on formularies and covered by insurance.  Mot. at 4;  Compl. ¶¶ 7, 9. And while the State nebulously asserts that PBMs are not using rebates "for their intended purpose" (Opp. at 13 (citing no source)), that does nothing to support a claim against *Manufacturers*.

Nor does Illinois plausibly allege that Manufacturers offended public policy. It invokes three putative "public policies," none of which support its claim. The first is simply the CFA's bar on deceptive conduct. Opp. at 11. But repeating a deception claim does not state a separate

unfairness claim. *Halperin v. Int'l Web Services, LLC*, 123 F. Supp. 3d 999, 1007 (N.D. Ill. 2015) (dismissing unfairness claim not pled "separate and apart from the deception"); *Page v. Alliant Credit Union*, 2021 WL 1688176, at *2–3 (N.D. Ill. Apr. 29, 2021) (dismissing unfairness claim "tacked on" to deception claim). This "unfairness" claim collapses with the deception claim.

Illinois's second "public policy" is "Illinois jurisprudence" that forbids "charging an unconscionably disproportionate price for little or no services." Opp. at 11 (citation omitted). But again, there is no dispute that Manufacturers *do* provide insulin, a valuable good. That distinguishes this case from *People ex rel. Fahner v. Hedrich*, in which defendant charged a "sales commission" without doing any work to facilitate sales. 438 N.E.2d 924, 929 (Ill. App. Ct. 1982); *see also Galvan v. Nw. Mem'l Hosp.*, 888 N.E.2d 529, 537 (Ill. App. Ct. 2008) (distinguishing *Hedrich* "because the plaintiff [in *Galvan*] received numerous medical procedures and therapies").

The third "public policy" that the State cites is Illinois's cap on out-of-pocket insulin costs for insured consumers, 215 Ill. Comp. Stat. 5/356z.41. Opp. at 11. But as Manufacturers already pointed out, the Legislature did *not* regulate Manufacturers or their prices, but rather imposed price-controls on *insurers*. Mot. at 11. Illinois thus cannot show that Manufacturers somehow violated that statute.

Finally, Illinois fails to allege that Manufacturers' conduct is "immoral, unethical, oppressive, or unscrupulous." *Toulon*, 877 F.3d at 740. The State argues that Manufacturers are "price goug[ing]." Opp. at 12. But again, high prices are not a basis for a CFA claim. Mot. at 20–21; Opp. at 10. Illinois fails to distinguish the case law supporting that rule. As *Galvan* explains, complaints about high prices created by disparities in health insurance "should be directed to the deliberative process of the legislature." 888 N.E.2d at 539. That statement is not a "contention set forth in an amicus brief," as Illinois falsely asserts, but was endorsed by the court. Opp. at 13;

*Galvan*, 888 N.E.2d at 539 ("As the amicus Illinois Hospital Association *correctly contends* …") (emphasis added). And the *Galvan* court held that a challenge to "exorbitant rates … failed to make out a case for unfairness." *Id*. at 538–39.

Illinois attempts to distinguish other cases because those plaintiffs "had meaningful … alternatives to paying excessive prices." Opp. at 13. That argument ignores *Galvan*, in which the plaintiff "suffered serious injuries" before being "taken to the emergency room at [the hospital] where he underwent surgery." 888 N.E.2d at 433. Independently, Illinois also failed to plead that people with diabetes have no choice about the prices they pay; it instead pleads that those costs depend on their insured status, benefit design, and use of affordability programs. Mot. at 21.

The State fails to establish any of the elements of a CFA unfairness claim. Each failure independently warrants dismissal.

## III.      ILLINOIS CANNOT SALVAGE ITS UNJUST ENRICHMENT CLAIM.

Illinois's unjust enrichment claim relies on the same allegations as its CFA claim, and thus "resolution of the [consumer] fraud claim … is dispositive of the unjust enrichment claim." *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc*., 493 F.3d 841, 855 (7th Cir. 2007); *see* Opp. at 22. Since Illinois's CFA claim fails, its unjust enrichment claim also fails.

The claim also fails on its own terms. Unjust enrichment is unavailable if a contract governs. *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014). And Illinois never denies that contracts govern here, instead arguing only that Manufacturers are not parties to those contracts. Opp. at 22. But as Manufacturers' motion explained, Illinois cannot "sue non-parties to [a] contract who allegedly benefit from the contract's performance." Mot. at 23 (citing *RBS Citizens, N.A. v. Bentley Motors, Inc.*, 2012 WL 1565457, at *3 (N.D. Ill. May 2, 2012)). That is Illinois's theory—that Manufacturers "receiv[ed] a benefit from the performance of contracts between" Illinois and third parties. *Zurich Ins. Co. v. Lifschultz Fast Freight, Inc.*, 1991 WL 49577,

at *4 (N.D. Ill. Apr. 4, 1991); Opp. at 22–23. Manufacturers "may not be sued" on that basis. *Id.*

Independently, this claim also fails because Illinois fails to allege retention of a benefit conferred by Illinois consumers. *See Banco Panamericano, Inc. v. City of Peoria,* 880 F.3d 329, 333 (7th Cir. 2018). Illinois argues that Manufacturers benefitted "indirectly through third parties," because the "Scheme created enormous profits for all Defendants." Opp. at 23. But the allegations it cites do not support that point. *See* Compl. ¶¶ 350 (detailing mechanics of alleged scheme), 370–72 (alleging increased list prices—not net prices), 369 (alleging Manufacturers profit from insulin, not that profits increased). The complaint is clear that Manufacturers' profits did not increase; they "largely maintain[ed] their net prices." Compl. ¶ 340. That fact alone requires dismissal. *See In re Arthur J. Gallagher Data Breach Litig.*, 2022 WL 4535092, at *10 (N.D. Ill. Sept. 28, 2022).

In any event, Illinois law recognizes an "indirect[]" benefit in only three circumstances, of which Illinois cites two: "the defendant procured the benefit … through … wrongful conduct" and Illinois "has a better claim to the benefit than the defendant." Opp. at 24. Neither applies.

*First*, Illinois cannot establish wrongful conduct. The alleged benefit—revenue from selling insulin to wholesalers—is the product of mutually beneficial transactions. In addition, recovering for unjust enrichment requires more than alleging someone somewhere benefitted from wrongful conduct—there must be a connection between the wrongful conduct and the plaintiff. *See Indep. Tr. Corp. v. Fid. Nat'l Title Ins. Co. of N. Y.*, 577 F. Supp. 2d 1023, 1050 (N.D. Ill. 2008). As Manufacturers explained, that means Illinois had to allege that "the property that a third party gave to the defendant"—wholesalers' payments for insulin—"belonged to [Illinois], in any meaningful sense." *Id.; see* Mot. at 25; Opp. at 24. Illinois does not even attempt to do so.

*Second*, Illinois cannot establish that it has a "better claim" to wholesalers' payments for insulin. That would require Illinois to identify a legal doctrine giving it a right to the wholesalers'

payments. *See, e.g.*, *First Sav. Bank of Hegewisch v. Orchowski*, 1994 WL 148668, at *8 (N.D. Ill. Apr. 21, 1994) (thief cannot pass title); *Indep. Tr. Corp.*, 577 F. Supp. 2d at 1049–50 (constructive trust principles). Illinois does not, instead asserting without support that consumers were overcharged and so have a right to wholesalers' payments. *See* Opp. at 24.[6] Because Illinois fails to identify any separate legal doctrine, it cannot establish a "better claim."

## IV.    ILLINOIS'S CLAIMS ARE TIME-BARRED.

### A.    Illinois Was On Notice Of Its Claims More Than Five Years Ago

Illinois does not dispute that the statute of limitations, if applicable, facially bars its claims. Nor does Illinois dispute that news outlets, legislators, other plaintiffs, and Manufacturers themselves extensively discussed the facts underlying the challenged conduct—the interplay between rebates and list prices—before 2017. Those facts are dispositive: public discussion of facts comprising a claim is more than adequate to give Illinois "[s]ome indication of wrongdoing." *Heiman v. Bimbo Foods Bakeries Distrib. Co.*, 902 F.3d 715, 720 (7th Cir. 2018); *see Tomlinson v. Goldman, Sachs & Co.*, 682 F. Supp. 2d 845, 847 (N.D. Ill. 2009) (plaintiff on notice of facts "publicly available from multiple news sources"). The same is true of lawsuits filed by consumers from several states—including Illinois—challenging the same "scheme." Complaint, *In re Insulin Pricing Litig.*, No. 17-699 (D.N.J. Feb. 2, 2017), ECF No. 1 at ¶¶ 2, 10–12, 14, 21. Illinois cannot plausibly claim it "could not have known[] of [Manufacturers'] wrongful conduct" while it copies allegations verbatim from a years-old complaint. Opp. at 29; *see* Mot. at 27–28.

Illinois insists that "any filing by the State …would have been the product of guesswork" before "[i]ssuance of the Senate Insulin Report" in 2021. Opp. at 29–30. But in 2019, *Illinois's lawyers* brought mirror-image claims, ultimately dismissed with prejudice. *See Harris Cnty. v. Eli*

---

[6] *Sullivan's* does not discuss unjust enrichment. 573 N.E.2d 1370 (Ill. App. Ct. 1991).

*Lilly*, No. 19-cv-4944, Dkt. 1-1 at 92-93 (S.D. Tex. 2019) (pleading signed by Joanne Cicala and listing Joshua T. Wackerly). Illinois copied heavily from that complaint, showing it could have discovered its claims well before the Report. *Compare, e.g.*, *id.* ¶ 16 *with* Compl. ¶ 20.

## B. Illinois's Claims Are Subject To The Statute Of Limitations.

Next, Illinois incorrectly contends that no statute of limitations applies. The State first argues that, because the CFA does not expressly provide a limitations period, there must not be one. *See* Opp. at 24–25. But Illinois has an explicit 5-year statute of limitations for "all civil actions not otherwise provided for." *See* 735 Ill. Comp. Stat. 5/13-205; *see Seaman v. Thompson Elecs. Co.*, 758 N.E.2d 454, 458 (Ill. App. Ct. 2001) (five-year limitation applies to suits brought under statutes "silent regarding a limitations period" since they are "an action 'not otherwise provided for'"). Courts regularly apply this "catch-all" statute of limitations to otherwise silent statutes. *See, e.g.*, *id.* (Illinois Prevailing Wage Act); *Blacke v. Indus. Comm'n*, 644 N.E.2d 23, 25–26 (Ill. App. Ct. 1994) (Illinois Worker's Compensation Act). Illinois's lone authority, *State of Illinois v. Tri-Star Industrial Lighting, Inc.*, offers no support for its argument because it does not address the applicability of the catch-all. 2000 U.S. Dist. LEXIS 14948, at *7 (N.D. Ill. Oct. 11, 2000).

Illinois also argues there is no statute of limitations because it sues "in a public capacity." Opp. at 25. Governmental immunity, however, applies only when there is a legal "obligation … to undertake the action." *Village of DePue. v. Viacom Int'l, Inc.*, 713 F. Supp. 2d 774, 783 (C.D. Ill. 2010). Unless the Attorney General is required to sue, the normal statute of limitations applies. *See Champaign Cnty. Forest Pres. Dist. v. King*, 683 N.E.2d 980, 982–84 (Ill. App. Ct. 1997) (statute of limitations triggered in part because "no provision of the Act [] require[d]" the forest preserve to act). Yet Illinois admits there was no obligation here: the CFA "makes a consumer action by the Attorney General *permissive*." Opp. at 25 (emphasis added). That is fatal to its argument. *See People ex rel. Hartigan v. Agri-Chain Prod., Inc.*, 586 N.E.2d 535, 538 (Ill. App.

Ct. 1991) (statute of limitations applied where, among other things, there was "no duty … to act").

It is no answer that the Attorney General has a general duty to represent the "interests of the State and its citizens." Opp. at 25. That is not the same as a duty to bring a particular lawsuit. *See Agri-Chain Prod., Inc.*, 586 N.E.2d at 538 (State of Illinois and Department of Labor had "no duty" to bring suit despite role acting on behalf of public). Indeed, the Attorney General has a variety of discretionary enforcement options—all of which could serve the "interests of the State and its citizens." *See* 815 Ill. Comp. Stat. 505/4, 505/3. As a result, Illinois's claims are "not immune from the applicable statute of limitations." *People ex rel. Ill. Dept. of Labor v. Tri State Tours, Inc.*, 795 N.E.2d 990, 994–95 (Ill. App. Ct. 2003).

### C. Illinois Has Not Alleged A Continuing Violation.

Illinois argues that, even if a statute of limitations applies, it must be tolled because the putative CFA "violations are still continuing" through list price increases, and because it would be "unreasonable" to sue for each violation. Opp. at 26. But the continuing violation doctrine does not apply to every claim that involves "continuing or repeated injurious behavior," but only where it is "the pattern, course, and accumulation of acts that make the conduct … actionable, whereas one instance of such behavior might not be." *Pavlik v. Kornhaber*, 761 N.E.2d 175, 186–87 (Ill. App. Ct. 2001) (cited at Opp. at 26). Nor does the doctrine apply whenever it would be "unreasonable" for *any* reason "for plaintiff to sue separately on each violation." *See* Opp. at 26 (citing *In re Gaslight Club, Inc.*, 167 B.R. 507, 520 (Bankr. N.D. Ill. 1994)). Separate suits must be unreasonable specifically because a violation is part of "a series of acts whose character only becomes apparent when viewed in light of later acts." *Gaslight Club*, 167 B.R. at 520.

Here, Illinois alleges that "each instance in which a consumer was overcharged" is a separate violation. Opp. at 26. Under that view, no "accumulation of acts" makes an overcharge "actionable"—each sale could support its own cause of action. *Pavlik*, 761 N.E.2d at 186–87.

Illinois's cases confirm that the continuing violation doctrine is inapplicable where, as alleged here, there are "separate and complete wrong[s]." *Gaslight Club*, 167 B.R. at 520; *see Hyon Waste Mgmt. Servs., Inc. v. City of Chicago*, 574 N.E.2d 129, 133–134 (Ill. App. Ct. 1991); Opp. at 26 (citing *Gaslight Club* and *Hyon Waste*). Because the "light of later acts" wasn't necessary to make Illinois's claims "apparent," they are time-barred. *Gaslight Club*, 167 B.R. at 520.

### D. Illinois Has Not Alleged Fraudulent Concealment.

Illinois recognizes that its fraudulent concealment argument requires it to identify affirmative acts to conceal the alleged scheme. Opp. at 30. But the most it offers is two paragraphs of its complaint that baldly assert that "Defendants affirmatively concealed" their conduct. Opp. at 29 (citing Compl. ¶¶ 452, 455). Such "labels and conclusions" are not enough; Illinois had to allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Illinois failed to do so in its complaint and fails to cite any support in its opposition.

At best, Illinois asserts that Manufacturers' net prices and rebate amounts are not public. Opp. at 28–29. But that assertion has nothing to do with whether Manufacturers "fraudulently concealed" the alleged scheme. As discussed above, the plethora of news reports, near-identical litigation, and Manufacturers' own statements made the features of the alleged scheme—changes in Manufacturers' insulin list prices over time,[7] the pressure on Manufacturers to "increase the level of rebates … to maintain favorable formulary positions,"[8] and the relationship between rebates and list prices[9]—public long ago. *See also* Mot. at 26–28.

### <u>CONCLUSION</u>

Defendants respectfully request that the Court dismiss Illinois's complaint with prejudice.

---

7 Compl. ¶¶ 15–16, 261–77, Figs. 1–11.
8 *Sanofi*, 2014 Annual Report (Form 20-F) at 11 (Mar. 10, 2015); *see also* Mot. at 26–27.
9 *See, e.g.*, Dkt. 60-4, Matthew Herper, *Inside the Secret World of Drug Company Rebates*, FORBES (May 10, 2012) ("Drug firms['] annual price increases are partly a way to deal with all this rebating.").

Dated: May 4, 2023

Respectfully submitted,

/s/ Ryan J. Moorman
_____

James F. Hurst, P.C.
Andrew A. Kassof, P.C.
Diana M. Watral, P.C.
Ryan J. Moorman
Jason A. Feld
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: +1 312 862 2000
Facsimile: +1 312 862 2200
Email: james.hurst@kirkland.com
Email: akassof@kirkland.com
Email: diana.watral@kirkland.com
Email: ryan.moorman@kirkland.com
Email: jason.feld@kirkland.com

*Attorneys for Eli Lilly and Company*

Suyash Agrawal
Paul Berks
MASSEY & GAIL LLP
50 East Washington Street, Suite 400
Chicago, IL 60602
Telephone: +1 312 283 1590
Email: sagrawal@masseygail.com
Email: pberks@masseygail.com

James P. Rouhandeh
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone: +1 212 450 4835
Email: rouhandeh@davispolk.com

Neal A. Potischman
Andrew D. Yaphe
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, CA 94025
Telephone: +1 650 752 2000
Email: neal.potischman@davispolk.com

Email: andrew.yaphe@davispolk.com

*Attorneys for Novo Nordisk Inc.*

Jordan M. Matthews
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: +1 312 782 3939
Email: jmatthews@jonesday.com

Shirlethia V. Franklin
William D. Coglianese
Theresa C. Martin
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Telephone: +1 202 879 3939
Email: sfranklin@jonesday.com
Email: wcoglianese@jonesday.com
Email: tcoughlin@jonesday.com

*Attorneys for Sanofi-Aventis U.S. LLC*